CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
James E. Cecchi
Melissa E. Flax
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
Fax: (973) 994-1744

SEEGER WEISS LLP
Stephen A. Weiss (*pro hac vice* admission will be sought)
One William Street
New York, NY 10004
Tel: (212) 584-0700
Fax: (212) 584-0799

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Damone Dickerson, on Behalf of Himself and all Others Similarly Situated, | Civil Action No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| vs. | Jury Trial Demanded |
| Apple Computer, Inc., AT&T, Inc. and AT&T Mobility LLC, | |
| Defendants. | |

Plaintiff, on behalf of himself and all others similarly situated, based on the investigation of counsel, the existing public record and on knowledge, information and belief, formed after an inquiry reasonable under the circumstances alleges as follows:

## NATURE OF THE ACTION

1. Defendant Apple Computer, Inc. (hereinafter "Apple") has misrepresented to the public the speed, strength and performance of the 3G bandwidth network while using the 8GB iPhone 3G and the 16GB iPhone 3G (hereinafter "3G iPhones").

2. The term "3G" refers to the third generation in mobile communications technology. Specifically, 3G technology features faster bandwidth and transfer rates. 3G networks are supposed to have a potential transfer rate of 3,000,000 bits per second (3 Mbps). Apple's 3G

iPhones combined with AT&T's 3G Service Plan fail to deliver 3G service to Plaintiff and all other 3G iPhone users as advertised.

3. Apple included the term 3G in the name of the 3G iPhones in order to advertise that these products are 3G phones. Apple has engaged in a campaign to lead consumers to believe that the 3G iPhones are connected to AT&T's 3G Network and receive full and continual 3G speeds. This is not the case, since Plaintiff and others similarly situated only experience 3G bandwidth and transfer rates a fraction of the time that they are connected to the AT&T Network.

4. Apple and Defendants AT&T Mobility LLC and AT&T, Inc. (collectively "AT&T") have an agreement, whereby AT&T is the exclusive service provider for the iPhones and 3G iPhones. Consumers are unable to choose any other network or carrier when using their 3G iPhone. Through this joint agreement, Apple and AT&T have engaged in a collaborated scheme to deceive Plaintiff and other consumers, since the 3G iPhone and AT&T's 3G Network are faulty and rarely provide 3G connectivity to its customers. Most of the time, Plaintiff receives no 3G connectivity at all.

5. Apple knew, or should have known, or was obligated under the law to understand that the 3G iPhone could not deliver the promised speed. Yet both Apple and AT&T profited by selling upgraded plans to consumers and requiring Plaintiff and others to enter into a new two (2) year contract. Additionally, the Defendants enjoyed the benefit of being the exclusive service provider for 3G iPhones in the United States.

6. Apple and AT&T (collectively the "Defendants") knew, should have known, or were obligated under the law to understand, that AT&T's 3G Network would not be able to handle the massive influx of their 3G iPhones given that public reports indicated that the Defendants anticipated sales of 10 million 3G iPhones.

7. The 3G iPhones suffer from either a hardware flaw, demanding too much power from the 3G bandwidths, or a software flaw in the programmed algorithms. Due to this flaw, Plaintiff and the members of the Class are unable to receive continuous 3G speed and transfer rates.

8. Based on how the 3G iPhones are set up and designed, the strain on AT&T's 3G Network would make it impossible to provide reliable and sustained 3G connectivity to customers.

9. Alternatively, Apple and AT&T have oversold the network by selling more phones and more subscription plans than AT&T's 3G infrastructure can handle.

10. Due to AT&T's overloaded 3G network, it is quite common for 3G iPhone users to be on the 3G network for only a few minutes before their 3G iPhone switches over to the slower Enhanced Data rates for GSM Evolution ("EDGE") network, even in areas with rich 3G coverage.

11. Not only did Defendants fail to warn customers, they actively advertised that the new iPhone was 3G on the nation's fastest 3G network.

12. Based upon typical transfer rates, download, and upload speeds, 3G service is 10 times faster than EDGE.

13. According to published reports, AT&T spokesperson, Brad Mays stated that the 3G iPhones were "performing great." "Customers in 300 major metro areas in the United States and 350 by the end of the year are experiencing the fast network connectivity that our 3G network provides," according to Mays in an interview. Mays also stated that, "We have anticipated the influx of users and have reported that the strength of the network can, does and will continue to support that." Brian X. Chen, "iPhone 3G Users Heated Over Network Issues," July 23, 2008, http://blog.wired.com/gadgets/2008/07/iphone-3g-users.html, (Accessed on August 29, 2008)

14. However, the 3G iPhones' sensitivity to third-generation network signals is well below the level specified in the 3G standard. This poor connectivity may be due to either a hardware problem introduced during mass production or a software problem caused by the internal program algorithm.

15. The 3G iPhones do not contain a disclaimer on the packaging nor on the outside of their respective box that the device will not provide continuous 3G service.

16. Consumers, such as the Plaintiff, may look for disclosures and/or disclaimers on the outside of its boxes or advertising material prior to making any electronics device purchase. Such information provides consumers with the necessary information to make an informed purchasing decision. This is especially true when a consumer is purchasing or considering the purchase of an expensive electronic device. Disclosures about the true nature of the 3G iPhones and the speed and performance of AT&T's 3G Network should have been provided to customers prior to

3

purchasing the 3G iPhone. However, based on its extensive advertising campaign focusing on the 3G speed and performance, consumers were mislead into believing that the 3G iPhones would operate primarily, if not exclusively, on a 3G network.

17. AT&T sells 3G iPhones on its website. AT&T also provides exclusive 3G network service for the 3G iPhones.

18. President and CEO of AT&T's wireless unit Ralph de la Vega directly aligned the company with the sale of the iPhone in a statement on AT&T's website when he noted that, "We will continue to expand our 3G network coverage into new areas, grow <u>our lineup</u> of industry-leading devices, such as iPhone <u>3G</u>, and deliver compelling new 3G services to market like Video Share SM." *AT&T Offers Nation's Fastest 3G Network*, "Nation's Fastest 3G Network Complements Best Global Coverage and Industry-Leading Portfolio of 3G Devices", July 10, 2008, http://www.att.com/gen/press-room?pid=4800&cdvn=news&newsarticleid=25921 (Accessed September 4, 2008) (Emphasis added).

19. Apple intended to sell approximately 10 million 3G iPhones within the first year of the 3G iPhones availability.

20. Plaintiff has also paid a premium for his 3G iPhone and the promised 3G service (he bought the 3G iPhone to replace his existing non-3G phone).

21. The Defendants acted in concert in the sale and marketing of the 3G iPhones and 3G Service Plans and knew or should have known that they would sell more 3G iPhones and Service Plans than the AT&T network could handle.

22. AT&T charged, and continues to charge, Plaintiff $10.00 per month for 3G network coverage.

23. AT&T requires consumers, including Plaintiff, to enter into a two-year contract with AT&T in order to sign up for AT&T's 3G network. AT&T did not warn Plaintiff of the connectivity problems with its 3G Network or the 3G iPhones' connectivity problems.

24. As a proximate result of the misrepresentations of Defendants, Plaintiff is locked into a two-year Service Plan with AT&T for 3G connectivity that is spotty at best and for which he pays a premium. Further, AT&T charged Plaintiff an additional $18.00 service fee when the service

4

contract was signed.

25. This complaint seeks, among other things: (1) equitable and injunctive relief, including corrective labeling and advertising, and the imposition of a constructive trust on all monies unlawfully obtained by Defendants; and (2) the recovery of compensatory, statutory and/or punitive damage as well as obtaining restitution and disgorgement from Defendants of their ill-gotten gains.

## JURISDICTION AND VENUE

26. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d) because: (i) there are more than 100 Class members; (ii) there is an aggregate amount in controversy greater than $5,000,000.00, exclusive of interest and costs; and (iii) there is diversity because at least one Plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims stated in this complaint pursuant to 28 U.S.C. §1367.

27. The exact amount of damages caused to the Class members cannot be precisely determined without access to Defendants' records.

28. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because the Defendants maintain a substantial presence in this District and have numerous retail sales locations throughout this District. Apple has received substantial compensation from the sale of the 3G iPhones by doing business in this District. AT&T has also received substantial compensation from 3G service plans entered in this District. Defendants have made numerous misrepresentations concerning the quality and performance of the 3G iPhones and AT&T's 3G Network, which had effects in this District. Thus, as to the named Plaintiff, thousands of Class members and a portion of the overall Class, certain liability of the Defendants arose in this District; certain contracts were entered into here, were to be performed here and were breached here.

29. This Court also has jurisdiction over each Defendant named herein because each Defendant is authorized to do business in New Jersey and has registered with the State of New Jersey, or does sufficient business, has sufficient minimum contacts with New Jersey, or otherwise intentionally avails itself of the New Jersey market, through the promotion, marketing,

advertising of employment positions for delivery drivers and/or sell their products in New Jersey, to render the exercise of jurisdiction by the New Jersey Courts permissible under traditional notions of fair play and substantial justice.

## THE PARTIES

30. On personal knowledge, Plaintiff, Damone Dickerson, is, and at all material times was, a resident of Little Rock, Arkansas. Plaintiff sues on behalf of himself and all others similarly situated. Plaintiff purchased an Apple 3G iPhone, which was advertised, distributed, and/or sold, by Apple Computer, Inc. and monthly service provided by AT&T Mobility LLC in Arkansas. For the reasons stated herein, Plaintiff has suffered injury in fact and has lost money and/or property due to Defendants' improper acts, *i.e.*, their practice of engaging in false and misleading advertising concerning the speed and performance of the 3G iPhones.

31. Defendant Apple Computer, Inc. ("Apple") is a California corporation that is licensed to do, and is doing, business in New Jersey and throughout the United States. Its principal offices are located in Cupertino, California. Apple transacts business in New Jersey and at all relevant times designed, manufactured, promoted, marketed, distributed, and/or sold the products that are the subject of this complaint, throughout the United States and New Jersey.

32. Defendant AT&T Mobility LLC is a Delaware corporation and maintains its headquarters in Atlanta, Georgia. AT&T Mobility LLC provides wireless services, including local wireless communications, long-distance, and roaming services with various postpaid and prepaid service plans throughout the United States. AT&T Mobility is licensed to do, and is doing, business in New Jersey and throughout the United States. Its principal offices are located in Atlanta, Georgia. AT&T Mobility LLC is a wholly owned subsidiary of AT&T, Inc.

33. Defendant AT&T, Inc. is a Delaware corporation that maintains its global headquarters in San Antonio, Texas. AT&T, Inc., through AT&T Mobility, provides telecommunications services to consumers and businesses in the United States. AT&T transacts business in New Jersey and at all relevant times designed, manufactured, promoted, marketed, distributed, and/or sold service plans that are one of the subjects of this complaint, throughout the United States and New Jersey. AT&T owns, operates, and/or maintains a 3G network in New Jersey. AT&T also

has other significant contacts with New Jersey, and the activities complained of herein occurred, at least in part, in New Jersey.

34. Apple and AT&T's authorized retailers/resellers were Apple and AT&T's agents, employees, servants, joint ventures, actors in concert, aiders and abettors and co-conspirators.

35. In bringing this action, Plaintiff either directly or indirectly acted in response to, *inter alia*, the representations, advertising and other promotional materials prepared and approved by the Defendants and their agents and disseminated on the packaging of the 3G iPhones and/or through local and national advertising media, including Defendants' Internet websites.

36. Plaintiff also acted in response to the Defendants' representations concerning the speed and performance of the 3G iPhones and AT&T's 3G network. Defendants failed to disclose to Plaintiff and the proposed class that the infrastructure of the 3G network and the 3G iPhones were insufficient to provide the represented performance and speed.

37. At all relevant times, Defendants have made, and continue to exaggerate and misrepresent the speed, performance, and connectivity of the 3G iPhones in their marketing, advertising and/or sale of the 3G iPhones.

## CLASS ACTION ALLEGATIONS

38. This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff brings this action both in his individual capacity and as a class action against Defendants on behalf of himself and the Class, which consists of all consumers who purchased defective 3G iPhones designed, marketed, manufactured, distributed, and sold by Defendants and entered into 3G service contracts with the Defendants.

39. Excluded from the class are Defendants, including any entity in which Defendants have a controlling interest, or which is a parent or subsidiary of, or which is controlled by Defendants, and the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, or assigns of Defendants.

7

40. The members of the class ("Class members") are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the proposed Class.

41. Common questions of law and fact exist as to all Class members and predominate over any questions that affect only individual Class members. These common questions of law and fact include:

    a. Whether Defendants engaged in false and misleading advertising concerning the speed and performance of the iPhones;

    b. Whether Defendants engaged in false and misleading advertising concerning the speed and performance of the 3G network;

    c. Whether Defendants knowingly concealed the defective design of the 3G iPhones;

    d. Whether Defendants' business practices violate New Jersey law for which Plaintiff and Class members may recover damages;

    e. Whether Plaintiff and Class members are entitled to statutory relief;

    f. Whether Plaintiff and Class members are entitled to punitive relief;

    g. Whether Plaintiff and Class members are entitled to compensatory relief; and

    h. Whether Plaintiff and Class members have sustained damages,

and, if so, what is the proper measure of those damages?

42. Plaintiff's claims are typical of the claims of Class members as he and each Class Member sustained, and continue to sustain, damages arising from Defendants' wrongful conduct.

43. Plaintiff will fairly and adequately protect the interests of the Class members and has no interests that are antagonistic to the interests of any other class member. Plaintiff has retained counsel who have experience and success in complex litigation.

44. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class members is impracticable. Furthermore, because the damages suffered, and continue to be suffered, by each individual Class Member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous.

45. Moreover, the prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

46. Plaintiff brings this action of behalf of himself and all others similarly situated within the State of New Jersey and all other states, as the Court may deem appropriate. The proposed class is both ascertainable, and shares a well-defined community of interest in the questions of law and fact as further detailed below.

47. Plaintiff seeks to represent a Class composed of and defined as follows: "All persons in New Jersey, or such other states as the Court determines to be appropriate, who purchased a 3G iPhone and AT&T 3G Service Plan." Plaintiff reserves the right to amend or modify the Class description with greater specificity or further division into subclasses.

9

A.        **Numerosity**

48.    The potential members of the Class as defined are so numerous that joinder of all the members of the Class is impracticable. While the precise number of Class members has not been determined at this time and the facts on which to calculate that number are presently within the sole control of Defendants, Plaintiff believes that the number of people who have bought the 3G iPhone and signed up for the 3G service is over a million. Joinder of all members of the Class is therefore not practicable.

49.    The Class members are readily ascertainable. Defendants' sales subscription records would provide information as to the number and location of all Class members. The means available for identifying Class members would be based on a proposed class announcement, and initial discovery from Defendants Apple and AT&T's records to confirm the sales of 3G iPhones and 3G Service Plans. Since Defendants Apple and AT&T are likely to have accurate and detailed sales and service information regarding individuals who would be identified as Class members, there is an easy and accurate method available for identifying such members.

B.        **Commonality**

50.    There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

1.  Whether Defendants Apple and AT&T advertised and sold the 3G iPhones and 3G Service Plans, claiming increased speed and performance of the 3G iPhone, even if the connection would last for only a few minutes before reverting to the slower EDGE speed, which is not on the 3G Network; and

2.  Whether Defendants Apple and AT&T failed to disclose the 3G speed and performance discrepancy to consumers and whether such failure violates New Jersey's statutory and common-law prohibitions against such conduct

Thus, liability can be proven uniformly throughout the class by facts common to all members of the proposed class.

C.        **Typicality**

51. Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendants' common course of conduct in violation of laws as alleged herein. Plaintiff purchased the 3G iPhone as it was advertised with having the characteristics of better speed and performance than it actually has. Yet Plaintiff is not getting 3G connectivity with his 3G iPhone the majority of the time that he is connected to the AT&T 3G Network. Plaintiff did not receive any disclosures prior to, or after purchase, by Defendant Apple or AT&T that contradicted Defendants' contrary representations explaining the actual limitations in the 3G iPhone and its interaction with AT&T 3G Network's actual speed and performance. These facts are typical among the proposed class. Further, these facts are essential in proving the claims alleged in this complaint against Defendants.

### D. Adequacy of Representation

52. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff can adequately represent the class because his claim is typical of the class and the facts and legal issues are common between Plaintiff and the class. Moreover, Plaintiff has suffered all of the potential injuries and damages that might arise out of the conduct complained of herein. As such, Plaintiff can adequately represent the class because he will bring all potential legal actions and remedies that would be available to individual members of the class.

53. Plaintiff has retained attorneys that are competent and experienced in litigating large class actions, to represent their interests and that of the class. Plaintiff and his counsel have done significant work in identifying and investigating the potential claims in this action, have the necessary resources to adequately and vigorously litigate this action, have significant experience in handling class actions and the types of claims asserted herein, and have been appointed as class counsel by Courts in other actions. Plaintiff and counsel are aware of the fiduciary responsibilities to the Class members to fairly and adequately represent the Class. Plaintiff and counsel will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class based on the merits of these claims and the resource available.

### E. Superiority of Class Action

54. To the extent it is an element for class certification, a class action is a superior method for resolving the claims herein alleged as compared to other group methods for adjudicating these issues. The remedy to resolve the common class issues regarding the 3G iPhones and 3G Network Connectivity deficit capacity would be to refund the cost of the 3G iPhones and Service Agreement, which is estimated at approximately $500.00 per Plaintiff. Individually, this is not a significant amount, and would likely be limited to a small claims action by individual Plaintiffs. Such actions are inconceivable, as the costs associated with proving a prima-facie case would likely exceed the obtainable recovery.

55. The public interest will be served by addressing this matter as a class action. The adjudication of individual claims would result in a great expenditure of Court and public resources while a class action will result in a significant savings of these costs. Class action treatment will also allow similarly situated persons to resolve their claims in a manner that is most efficient and economical for the parties and the judicial system.

56. In addition, there is a substantial likelihood of inconsistent verdicts, which would frustrate the resolution of these legal issues for Defendants, forcing them to comply with inconsistent legal standards. Moreover, there is no assurance that individual claims will prevent the continued deceptive practices alleged herein. This would frustrate the purpose of New Jersey's consumer protection laws. Considering the actual size of the class, estimated to be at least one million, and the importance of the issues presented to the State of New Jersey (enforcing consumer protections through deceptive practices within the state), a class action is the desired method for resolving this matter. Moreover, with such common questions of fact, the Court is in a superior position to fashion a remedy that would uniformly apply to each, or nearly all, Class members.

57. Finally, failure to certify a class would make it impossible or impracticable for the majority of Class members to seek relief, as the costs of litigation would far exceed the remedy available. As such, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court.

58. Plaintiff is unaware of any difficulties that are likely to be encountered in the management

of this action that would preclude its maintenance as a class action.

## FIRST COUNT
## (Negligence)

59. Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

60. Plaintiff asserts this cause of action on behalf of himself and on behalf of the Class.

61. At all times mentioned, Defendants had a duty to properly manufacture, design, formulate, compound, test, produce, assemble, inspect, research, distribute, market, label, package, prepare for use and sell the 3G iPhone to function as a 3G phone as advertised.

62. Defendants negligently manufactured, designed, formulated, tested, produced, assembled, inspected, researched, distributed, marketed, labeled, packaged and sold the 3G iPhones as 3G devices that would provide reliable and sustained 3G connectivity.

63. As a direct and proximate result of the negligence and carelessness of the Defendants, Plaintiff and the Class have suffered, and continue to suffer, damages as alleged herein.

## SECOND COUNT
## (Breach of Express Warranty)

64. Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

65. Plaintiff asserts this cause of action on behalf of himself and on behalf of the Class.

66. Starting in or around the summer of 2008, Defendants represented, in writing and otherwise, that the compatibility and quality of the 3G network protocol or standard included in the iPhones would be twice as fast as prior models.

67. Defendants' representations, promises and assurances became part of the basis of the bargain between Apple and Plaintiff and the Class and thereby constituted an express warranty.

68. Defendants then sold the 3G iPhones to Plaintiff and members of the Class.

69. Defendants, however, breached the express warranty in that the 3G iPhones do not provide the functionality expected by consumers and/or do not provide 3G service as long as reasonably expected by consumers. Because of the stated breach, Plaintiff and the Class members did not receive goods as warranted by the Defendants.

70. As a direct or proximate result of this breach of warranty by the Defendants, Plaintiff and

13

the Class have suffered, and continue to suffer, damages in an amount to be determined at trial.

## THIRD COUNT
### (Breach of Implied Warranty of Merchantability)

71. Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

72. Plaintiff asserts this cause of action on behalf of himself and on behalf of the Class.

73. Starting in 2008, Plaintiff and members of the Class sought to purchase 3G iPhones with all the features and qualities that Apple claimed were maintained by the 3G iPhones. Plaintiff and the Class relied on Apple's industry reputation, skill, expertise and judgment to furnish a suitable product for the stated purpose.

74. When Defendants sold the 3G iPhone to Plaintiff and members of the Class, Plaintiff and the Class bought these goods in reliance on Apple's industry reputation, skill, expertise and judgment.

75. At the time of manufacturing, advertising and/or sale, Apple knew or had reason to know the particular purpose for which the goods were required or would be used. Apple knew that Plaintiff and members of the Class were relying on Apple's industry reputation, skill, expertise and judgment to manufacture and furnish a suitable device, thereby creating and confirming an implied warranty that the products or goods – the 3G iPhones – were fit for their stated and advertised purpose.

76. Plaintiff purchased the 3G iPhone and AT&T 3G Service Plan and used it for its ordinary and intended purpose of providing reliable and sustained 3G service. Plaintiff and the Class purchased their 3G iPhones and AT&T 3G Service Plans with the reasonable expectation that they would receive reliable and sustained 3G connectivity to their iPhones.

77. The 3G iPhones cannot perform their ordinary and intended purpose with reliable and sustained 3G connectivity.

78. Plaintiff and members of the Class did not receive suitable products or goods in the form of the 3G iPhone. The 3G iPhones were not fit for the particular purpose for which they were sought, purchased and required in that they did not have the features, quality or durability represented by Defendants.

14

79. As a direct or proximate result of this breach of implied warranty by Apple, Plaintiff and the Class have suffered, and continue to suffer, damages in an amount to be determined at trial.

## FOURTH COUNT
### (Unjust Enrichment)

80. Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

81. Plaintiff asserts this cause of action on behalf of himself and on behalf of the Class.

82. Plaintiff paid a premium for his 3G iPhone and the promised 3G service.

83. AT&T charged, and continues to charge, Plaintiff $10.00 per month for 3G network coverage.

84. Plaintiff has paid AT&T for 3G network coverage every month.

85. AT&T charged Plaintiff an additional $18.00 service fee when Plaintiff entered into his 3G network service contract for his 3G iPhone.

86. Plaintiff paid AT&T's $18.00 service fee when he signed his service contract.

87. AT&T required Plaintiff to enter into a two-year contract with AT&T in order to sign up for AT&T's 3G network. AT&T did not warn Plaintiff of the connectivity problems with its 3G Network or the 3G iPhones' connectivity problems.

88. As set forth above, Defendants, by means of their wrongful conduct, induced Plaintiff and the class to pay for 3G iPhones and AT&T's 3G Network service.

89. Plaintiff and the Class would not have incurred these costs absent the misrepresentations and misconduct by Defendants.

90. By virtue of the foregoing, Defendants have been unjustly enriched to the extent that Defendants received and kept revenues collected from the 3G iPhones, which they would not have received absent their improper conduct, and the related service contracts.

91. Defendants should be ordered to disgorge all monies they have received due to their misrepresentations.

92. Plaintiff and the Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unjust and inequitable conduct.

93. As a direct and proximate result of Defendants' actions, as described herein, Plaintiff and

15

the Class have been injured and have suffered, and will continue to suffer, damages in an amount to be determined at trial.

### FIFTH COUNT
(Negligent Misrepresentation)

94. Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

95. Plaintiff asserts this cause of action on behalf of himself and on behalf of the Class.

96. Starting in or about the summer of 2008, Defendants misrepresented to Plaintiff and the Class the quality of the 3G iPhones.

97. Starting in or about the summer of 2008, Defendants omitted material facts regarding the quality of the 3G iPhones.

98. Starting in or about the summer of 2008, Apple misrepresented to Plaintiff and the Class the quality and compatibility of the 3G network protocol or standard included in the 3G iPhones or the adequacy of AT&T's 3G Network.

99. Defendants owed a duty to Plaintiff and the Class to exercise reasonable care when issuing statements or disclosures regarding the nature of the iPhones.

100. At all times herein, Plaintiff and the Class were unaware of the falsity of the statements made by Defendants.

101. Apple and AT&T negligently misrepresented that the 3G iPhones and the AT&T 3G service plans would provide customers with 3G connectivity. Apple advertised their 3G iPhone as "Twice as Fast" as the previous iPhone. Both Apple and AT&T represented 3G connectivity between the 3G iPhones and AT&T's 3G Network.

102. At all relevant times, Defendants had no reasonable grounds for believing that their representations were true because the 3G iPhones had existing issues with 3G connectivity and the AT&T Network could not guarantee 3G connectivity to customers who purchased 3G Network service.

103. In making these representations, Defendants Apple and AT&T intended to induce Plaintiff and the Class to purchase the 3G iPhone and AT&T 3G Service Plan.

16

104. Plaintiff and the Class reasonably acted in response to the statements made by Defendants when they purchased a 3G iPhone and AT&T 3G Service Plan.

105. As a proximate result of the negligent misrepresentations of Defendants, Plaintiff and Class members have purchased 3G iPhones that do not perform as the Defendants represented and are now locked into a two (2) year Service Plan with AT&T, for 3G connectivity that is spotty at best and for which they pay a premium. Plaintiff and the Class were also compelled to pay a service fee that AT&T charges at contract signing time.

106. As a direct and proximate result of the Plaintiff's and the Class' reliance upon the representations made by Defendants, as described above, Plaintiff and the Class have suffered, and continue to suffer, damages and ascertainable loss.

## SIXTH COUNT
**(Violation of the New Jersey Consumer Fraud Act and Other Similar State Statutes)**

107. Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

108. Plaintiff asserts this cause of action on behalf of himself and on behalf of the Class.

109. Upon information and belief, the statements or disclosures regarding the quality of the 3G iPhones were likely to deceive or confuse Plaintiff and members of the Class.

110. Defendants engaged in false and misleading advertising concerning the speed and performance of the 3G iPhones.

111. As fully alleged above, by advertising, marketing, distribution, and/or selling the 3G iPhones to Plaintiff and the Class, Defendants engaged in, and continue to engage in, deceptive acts and practices.

112. In connection with the Service Plan fees charged by AT&T to Plaintiff and the Class, Defendants materially mislead Plaintiff and other Class members.

113. Plaintiff and the Class seek to enjoin Defendants from continuing to engage in further unlawful and deceptive acts. Additional consumers will be irreparably harmed unless the Defendants are enjoined from falsely and misleadingly advertising the speed and performance of the 3G iPhones. Plaintiff and the Class request an order granting injunctive relief as follows: order disclosures and/or disclaimers on the outside of the 3G iPhones' boxes or advertising

17

material prior to making any electronics device purchase.

114. Absent injunctive relief, Defendants will continue to market, distribute, and sell 3G iPhones to the detriment of its customers.

115. As described herein, Defendants have violated, and continue to violate, the New Jersey Consumer Fraud Act.

116. As a direct and proximate result of Defendants' actions, as described herein, Plaintiff and the Class have been injured and have suffered, and will continue to suffer, damages in an amount to be determined at trial.

## SEVENTH COUNT
### (Breach of Contract)

117. Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

118. Plaintiff asserts this cause of action on behalf of himself and on behalf of the Class.

119. In connection with the relationship between Defendants and Plaintiff and the Class members, Defendants assumed duties and contractual obligations, express and/or implied, to provide 3G network services to the 3G iPhones.

120. Defendants communicated their contractual obligations (and all terms and conditions of the same) to Plaintiff and the Class through various sources, including AT&T's Service Plan.

121. Plaintiff and the Class have fulfilled all conditions precedent with respect to the applicable contractual obligations or in relation to this action, or, in the alternative, the conditions precedent have otherwise been waived.

122. As a direct and proximate result of Defendants' breach, Plaintiff and the Class have been injured and have suffered, and will continue to suffer, damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the class request relief on all Counts as follows:

1. For an order certifying this case as a class action and appointing Plaintiff and counsel to represent the Class;

2. For injunctive relief enjoining Defendants from continuing the acts and practices complained of herein;

3. For an award of damages as appropriate;

4. For an order requiring disgorgement of Defendants' ill-gotten gains;

5. Reasonable attorneys' fees and costs of this suit;

6. Pre- and post-judgment interest; and

7. Such other and further relief as the Court deems necessary or appropriate.

## JURY DEMAND

Plaintiff and the Class demand a trial by jury on all claims so triable.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Plaintiff, by and through his attorneys, herby certifies that to the best of his knowledge, the matter in controversy is not related to any other pending civil action or arbitration proceeding and that none are contemplated and that all parties who should be joined have been joined.

DATED: March 16, 2009

Respectfully submitted,

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN

James E. Cecchi
E-mail: jcecchi@carellabyrne.com
Melissa E. Flax
E-mail: mflax@carellabyrne.com
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
Fax: (973) 994-1744

SEEGER WEISS LLP
Stephen A. Weiss
E-mail: sweiss@seegerweiss.com
One William Street
New York, NY 10004
Tel: (212) 584-0700
Fax: (212) 584-0799

Attorneys for Plaintiff